# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Steven S. Brown,          : Case No. 2:13-cv-00006
                          :
      Plaintiff,      : District Judge George C. Smith
                          : Magistrate Judge Sharon L. Ovington
vs.                       :
                          :
Director Mohr, *et al.*,  :
                          :
      Defendants.     :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.      Introduction

Plaintiff Steven S. Brown is an inmate presently incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio. He brings this case against many Defendants concerning alleged events that occurred and conditions that existed during his confinement at the Ross Correctional Institution. The case is pending upon Defendants' Motion for Summary Judgment and related documents (Doc. #s 254, 255, 257-59, 261, 262, 273), Plaintiff's Response in which he submits 126 Exhibits (Doc. #283), and the record as a whole. Defendants seek an order granting summary judgment in their favor on each of Plaintiff's remaining claims.

## II.      Remaining Claims And Remaining Defendants

Plaintiff was incarcerated at Ross Correctional Institution (RCI) during two time periods: nearly three months from January 18, 2011 through April 6, 2011 and nearly

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

sixteen months from March 15, 2013 through July 11, 2014.

Plaintiff's remaining claims focus on individuals employed by the State of Ohio during his two periods of confinement at RCI. Defendants fit into four groups:

1. Attorneys for the Ohio Department of Rehabilitation and Corrections (ODRC), including Austin Stout, Gregory Trout, and Trevor Clark;

2. Medical personnel, including Dr. Gary Krisher, Dr. Andrew Eddy (State Medical Director), and Lynda Smith (licensed practical nurse);

3. RCI administrators, including RCI Warden Rob Jeffries, Deputy Warden Upchurch, and RCI Director of Operations Ed Voorheis; and

4. ODRC Director Gary Mohr.

The substance of Plaintiff's remaining constitutional claims—which arise under 42 U.S.C. § 1983—will be described in the Discussion below, *infra*, § IV.

## III. Motions For Summary Judgment

A party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Barker v. Goodrich,* 649 F.3d 428, 432 (6th Cir. 2011). "A fact is material if it would establish or refute an 'essential element[ ] of a cause of action or defense asserted by the parties[.]'" *Estate of Romain v. City of Grosse Pointe Farms*, __F.3d__, 2019 WL 3808877, at *3 (6th Cir. 2019) (citation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is *genuine* where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (1986); *see Estate of Romain*, __F.3d__, 2019 WL 3808877, at *3 (citation omitted).

To resolve whether a genuine issue of material fact exists, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Richland Bookmart, Inc. v. Knox County, Tenn.,* 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)). With these reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter,* 488 F.3d 397, 402-03 (6th Cir. 2007) (quoting, in part, *Anderson,* 477 U.S. at 251-52).

## IV.  Discussion

To succeed in proving a cause of action under § 1983, a plaintiff must establish that a person acting under color of state law violated his or her rights under the Constitution or laws of the United States. *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018).

## A.  <u>Exhaustion</u>

Defendants contend that summary judgment is warranted in their favor on many of Plaintiff's § 1983 claims because he failed to administratively exhaust his claims before pursuing them in this Court.

An inmate seeking to challenge the "conditions of his confinement under section 1983…," must exhaust "such administrative remedies as are available [to him]."  42 U.S.C. § 1997e(a).  This statutory command is mandatory. *See Ross v. Blake*, __U.S.__, __136 S.Ct. 1850, 1856 (2016) ("An inmate 'shall' bring 'no action'…, absent

exhaustion of available administrative remedies."); *see Freeman v. Francis*, 196 F.3d

641, 645 (6th Cir. 1999). "A court may not excuse a failure to exhaust …." *Ross*, __U.S.

at __,136 S.Ct. at 1856.

An "inmate … must exhaust available remedies, but need not exhaust unavailable

ones." *Id*. at 1858 (discussing § 1997e(a)). Remedies are unavailable when interference

occurs: "[E]xhaustion is not required when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or

intimidation." *Id*. at 1860. Remedies are unavailable when they are illusory: "[A]n

administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859.

Similarly, remedies are unavailable where an "administrative scheme is so opaque that it

becomes, practically speaking, incapable of use." *Id*.

In Ohio, remedies are potentially available to inmates through a three-step

grievance procedure. *See* Ohio Admin. Code §§ 5120-9-31(A), (K). This procedure

allows inmates to seek administrative relief for grievances concerning "any aspect of

institutional life that directly and personally affects the grievant. This may include

complaints regarding policies, procedures, conditions of confinement, or the actions of

institutional staff." Ohio Admin. Code § 5120-9-31(A). Boiled down to its core, Ohio's

grievance procedure begins with filing an informal complaint, followed by a notification

of grievance, and ends with an appeal. Ohio Admin. Code §§ 5120-9-31(K)(1)-(3); *see*

*Marshall v. Ohio Dep't of Rehab. & Corrections*, No. 17-3569, 2018 WL 2539418, at *2 (6th Cir. 2018).

The informal complaint must be submitted to the "direct supervisor of the staff member, or department most responsible for the particular subject matter of the complaint…." Ohio Admin. Code § 5120-9-31(K)(1). "If the inmate is dissatisfied with the informal complete response…, the inmate may file a notification of grievance with the inspector of institutional services…." *Id*. at § 5120-9-31(K)(2). If dissatisfied, "the inmate may file an appeal with the inspector of institutional services. The appeal must then be filed to the office of the chief inspector …. The decision of the chief inspector or designee is final. Grievance appeals concerning medical diagnosis or a specific course of treatment shall be investigated and responded to by a health care professional." *Id*. at § 5120-9-31(K)(3).

Defendants contend that Plaintiff has failed to exhaust his claims against Defendants Stout, Trout, and Clark, attorneys for the ODRC; ODRC Director Mohr and Dr. Eddy; and Warden Jeffries. Although Defendants describe Ohio's administrative exhaustion procedures (Doc. #274, *PageID* #s 2285-87), they do not tie this description in any meaningful way to their repeated assertions that Plaintiff has failed to exhaust his administrative remedies. They simply provide no explanation of which administrative step or steps Plaintiff failed to exhaust as to his remaining claims against the remaining Defendants. *See* Doc. #254, *PageID* #s 2295, 2297, 2300, 2314.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

5

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citation omitted); *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); *see also* Fed. R. Civ. P. 56(a).  Because Defendants advance no explanation of which administrative step or steps Plaintiff did not take, *see* Doc. #254, *PageID* #2295, they have not met their initial burden of informing the court about the basis for its concluding there is no genuine issue of material fact concerning his failure to exhaust his administrative remedies.  *See Celotex*, 477 U.S. at 323; *see also Stokes v. Ells*, 2:14cv1601, 2017 WL 1091680, at *3 (S.D. Ohio 2017) (Smith, D.J.) ("The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion …."); *cf. Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("'Non-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on the [defendant.]'" (citation omitted)).

Despite these shortcomings, Defendants do have many meritorious arguments. *See infra*, §§ IV(B)-(F).  Lack of exhaustion as it is presently framed is not one of them.

**B.**     **Eleventh Amendment Immunity**

Defendants maintain that the Eleventh Amendment extends immunity to the state Defendants from Plaintiff's attempts to recover monetary damages against them in their official capacities.

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State …." U.S. Const. amend. XI . When the Eleventh Amendment applies in federal lawsuits, it bars monetary claims against a State or state officials acting in their official capacities. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (and cases cited therein). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' i.e., against the State." *Id.* (quoting, in part, *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989)).

The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See, e.g., Johns v. Supreme Court of Ohio,* 753 F.2d 524, 527 (6th Cir. 1985). Plaintiff does not contend otherwise. His claims are therefore barred to the extent he seeks monetary damages against state officials in their official capacities. *Id.*; *see Allen v. Ohio Dept. of Job and Family Services*, 697 F.Supp.2d 854, 908 (S.D. Ohio 2010) (Smith, D.J.) ("The Sixth Circuit has repeatedly and consistently held that the State of Ohio has not consented to be sued for state law claims in federal court.").

Accordingly, Defendants are entitled to summary judgment in their favor against claims Plaintiff raises against them in their official capacities.

## C.    Access to Courts

Plaintiff claims in his Third Amended Complaint that many Defendants, including

for example, Defendants Stout, Trout, and Clark, violated his constitutional right of access to the courts by withholding legal documents, denying access to his court-appointed attorney, denying access to a phone and "a legal phone," refusing to give him legal mail and discovery documents, denying him access to the law library, denying him a chance to buy stamps and legal supplies, denying him a pen and paper to write motions, and denying him access to law books and case law. (Doc. #132, *PageID* #1109). He alleges that these actions harmed his ability to pursue two lawsuits in federal court, denied him the ability to seek redress in the Ross County Courts, prevented him for providing documents in support of his petition for habeas corpus that prove his actual innocence, and "due to this total denial of his right of access to the Court finally signed, under duress a settlement in Brown v. Voorhies (Cincinnati)…." *Id.*

Defendants contend that summary judgment is warranted on this claim because Plaintiff has failed to allege an actual injury caused by a denial of access to the courts.

"The Constitution protects an individual's access to the judicial system—the right to bring a non-frivolous claim in a court of law." *Green v. City of Southfield, Mich.*, 925 F.3d 281, 285 (6th Cir. 2019).

> [To support] a claim for denial of meaningful access to the courts…, plaintiffs must plead and prove prejudice stemming from the asserted violation. Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim.

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, __, 116 S.Ct. 2174, 2180 (1996)).

Although Brown submitted many Exhibits in opposition to Defendants' Motion to Dismiss (doc. #283), his Exhibits do not contain affirmative evidence showing that a denial of access to the courts caused him actual prejudice in any of his cases. He, moreover, has not identified any case that was pending in any court other than "*Brown v. Voorhies* (Cincinnati)." (Doc. #132, *PageID* #1109). Construing this in Plaintiff's favor, he refers to *Brown v. Voorhies*, Case No. 1:07-cv-00463 (S.D. Ohio) (Beckwith, D.J.). During the two time periods at issue in the instant case, Brown filed seven documents in *Brown v. Voorhies* (Cincinnati). *See* Doc. #259, Exhibit I, Schroeder Aff., Exhibits I-2.[2] Brown acknowledges in his Third Amended Complaint that he settled *Brown v. Voorhies* (Cincinnati) and, therefore, he did not suffer an injury. *See* Doc. #132, ¶21, *PageID* #1109.

In a different *Brown v. Voorheis* case that was pending in the Eastern Division of this Court in Columbus, District Judge Frost described Plaintiff as quite able to file materials:

> As Plaintiff has been anything but shy in raising arguments in support of his positions in the past, the Court does not find this ground to be a credible basis for good cause. Moreover, the sheer volume of filings that Plaintiff has made in this Court suggest that Plaintiff has not been unduly hampered by photocopying limitations that the prison may have had in place.

*Brown v. Voorhies,* No. 2:07-cv-00013 (S.D. Ohio) (Doc. #315, *PageID* #2696).

---

[2] Schroeder's affidavit refers to Exhibit I-1, a summary of the documents Brown filed in 1:07cv463, but Exhibit I-1 is not attached to his affidavit. This matters little. A review of Exhibit I-2 reveals Brown filed seven documents between January and April 2011.

Brown filed at least sixty-four motions in that case alone. And he brought claims against a hefty number of—fifty-four—defendants based on claims similar to those in the present case. As a result, there is no genuine dispute over that fact that Brown suffered no actual prejudice in his *Brown v. Voorhies*, 2:07-cv-00013.

Additionally, during the time period relevant to this lawsuit, Brown filed sixteen documents in another case he filed in Cincinnati, *Brown v. Mohr*, Case No. 1:07-cv-00463 (S.D. Ohio). (Doc. #255, *PageID*# 2804). And he filed twenty-four documents in the instant case.[3]

Defendants assert that the same denial-of-access claims Plaintiff raises here "were dismissed in *Brown v. Mohr*, Case No. 1:12cv583 (Doc. #201, *PageID* #2069)." This is flat wrong. The claims dismissed in that case did not include claims in this case. *Id*. at #2050 ("the issues in this case are limited to those arising during Plaintiff's incarceration and SOCF, and exclude *Brown v. Mohr*, 2:13cv6 …."); *see id*., Doc. #218, *PageID* #2902 (same).

Defendants are, however, correct in pointing out that in the instant case, this Court has previously dismissed Plaintiff's claims against Defendants Heiss, Jeffries, Whitten, Dolan, Upchurch and Mohr for denial of access to the courts. *See* Doc. #177, *PageID* #s 1631-35, 1644-45, 1654; Doc. #197.[4] The reason: Plaintiff failed to

---

[3] A review of the docket sheet, 1:12cv583, reveals Brown filed sixteen documents between mid-March 2013 and mid-July 2014.

[4] This citation and those that follow are to the record of the present case, 2:13cv006, until otherwise indicated.

allege actual injury, as there are no specific deadlines he missed. *See* Doc. #177, *PageID* #1635. This conclusion also applies to Defendants Stout, Trout, and Clark. These Defendants are ODRC attorneys. There is no affirmative evidence in the record indicating that Stout, Trout, or Clark denied Plaintiff access to courts or caused him any actual injury in cases pending during the two pertinent time periods.

Plaintiff alleges that he wrote Stout "countless letters" about the misconduct of other individuals, but Stout did not take any action to remedy his complaints. (Doc. #255, Brown Depo. pp. 1560-61).[5] He has the same allegation about Trout. *Id.* at 1562-163. According to Plaintiff, the only action both Stout and Trout took was to write a letter to him trying to address his concerns by telling him to go through the grievance system. *Id.* at 1561, 1563. An apparent example of one page of these letters is found in the documents Plaintiff filed in Response to Defendants' Motion for Summary Judgment. *See* Doc. #283, *PageID* #5471.

Stout and Trout acknowledge in their affidavits that they received letters from Plaintiff making "various accusations of misconduct." (Doc. #259, *PageID* #3198; Doc. #262). Clark's affidavit explains that he would occasionally receive lengthy letters from Plaintiff making various accusations against him. (Doc. #255, *PageID* #2323). All three, Stout, Trout, and Clark, state that when they received letters from Plaintiff, they would forward them to the ODRC Chief Inspector's Office, which, they say, "is responsible for

---

[5] Deposition page numbers are used here instead of CMECF PageID numbers. The PageID numbers affixed to Brown's deposition are difficult to read because they are superimposed on PageID numbers in one of Plaintiff's Cincinnati cases.

investigating complaints against high-level staff." (Doc. #255, *PageID* #2323; Doc. #259, *PageID* #3198; Doc. #262). This belies Plaintiff's general assertion in his Third Amended Complaint that Stout, Trout, and Clark did not do anything in response to his letters. There is no genuine issue of material fact that each of these Defendants forwarded Plaintiff's letter because Plaintiff offers no affirmative evidence to the contrary. In addition, Plaintiff does not suggest what Stout, Trout, and Clark should have or could have done to stop the misconduct. And assuming they could have done more than forwarding his letters, without more this shows that at most they acted negligently or failed to supervise individuals at RCI engaged in misconduct against Plaintiff. Neither negligence nor respondeat superior exposes these Defendants to §1983 liability. *See Peatross v. City of Memphis,* 818 F.3d 233, 241 (6th Cir. 2016); *see also Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

Plaintiff's remaining argument asserts that he suffered an actual denial-of-access injury when Defendants prevented him from submitting documents showing his actual innocence in his habeas-corpus case. Plaintiff presents no specific information about the documents or how they would establish his actual innocence. Additionally, his habeas case in the U.S. District Court was not pending during the two pertinent time periods in the instant case. He filed his habeas petition in January 2007 and the District Court denied it on January 26, 2009—well before either of his incarcerations at Ross Correctional Institution. *See Brown v. Warden, Warren Correctional Institution*, 2:07cv14 (Doc. #1, *PageID* #s 4-5; Doc. #s 35, 50). Defendants in the instant case could not have denied Plaintiff access to the court in his habeas case when it was not

pending in the District Court during the pertinent time periods.

Accordingly, Defendants are entitled to summary judgment in their favor on Plaintiff's claim that they violated his First Amendment right of access to the Courts.

## D.    <u>Freedom From Torture</u>

Plaintiff alleges in this Third Amended Complaint that Defendants' misconduct amounted to torture. The purported misconduct involved harassment such as making fun of his mother when she was dying, depriving him of his legal papers, spilling his food on the floor, refusing to give him medication, and holding and destroying his legal mail. (Doc. #132, *PageID* #1111). "In frustration the plaintiff cussed everyone and went completely crazy…." *Id.* Plaintiff directs these allegations against "Warden Jeffries, D.W. Upchurch, Mr. Heiss, Capt. Posey, Lt. Yates, UMP Pence, Ms. Seacrest, ODRC lawyers Trout, Stout, and Clark, Warden Voorhies, Director Mohr, and Ryan Nolan." *Id.*

Plaintiff does not identify which of these Defendants engaged in one or more of the alleged acts that constituted harassment. The closest he comes is his allegation that when he "begged for help" certain people—Mary Anne Reese, Mr. Voorheis, and Director Mohr—did not respond. *See id.* But the allegation that these individuals did not respond to his requests for help at most implicates negligence in a failure to supervise the individuals at RCI allegedly engaged in misconduct against Plaintiff. Again, neither negligence nor respondeat superior exposes Reese, Mr. Voorheis, and Director Mohr—or any other Defendant—to §1983 liability. *See Peatross,* 818 F.3d

13

at 241; *see also Ahlers*, 188 F.3d at 373. The same goes for Plaintiff's harassment allegations against Defendants Strout, Trout, and Clark. *See Supra*, § IV(C).

Plaintiff, moreover, does not identify when these allegations occurred and he has not presented affirmative evidence upon which a jury could reasonable conclude that he suffered these acts of harassment during either period of his incarceration at RCI. Assuming, on the other hand, that Plaintiff was incarcerated at RCI when he agreed to settle his claim about the events concerning his mother, this Court previously dismissed those claims. *See* Doc. #139, *PageID* #1216 (striking ¶s 26-30 in the Third Amended Complaint and citing Doc. #12); *see also* Doc. #154.

If it also assumed that one or more of these Defendants personally involved themselves in the harassment he identifies, the harassment itself failed to violate the Eighth Amendment's prohibition against cruel and unusual punishment. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (quoting *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987)). The harassment Plaintiff allegedly endured fall within examples of unpleasant experiences that do not violate the Eighth Amendment, including banging on inmate's cell door, throwing inmate's food trays through the bottom slot of his cell door, making aggravating remarks to the inmate, making insulting remarks about inmate's hair length, growling and snarling through an inmate's window. *See Johnson*, 357 F.3d at 545. Although the allegations, if true, indicate ineptitude and "demonstrate

shameful and utterly unprofessional behavior…, they are insufficient to establish an Eighth Amendment violation." *Id*. at 546; *see Treesh v. Bobb-Itt*, 2:10cv211, 2011 WL 3837099, at *6 (S.D. Ohio 2011) (Smith, D.J.).

Accordingly, Defendants are entitled to summary judgment in their favor on Plaintiff's Eighth Amendment freedom-from-torture claim.

## E.    Retaliation

Plaintiff alleges that Defendant Clark retaliated against him for refusing to sign a release, and thereafter Plaintiff was moved to RCI. These claims against Defendant Clark were dismissed in *Brown v. Mohr*, Case No. 1:12cv583 (Doc #201, *PageID* #2068). Yet, if a viable retaliation claim remains, Defendants argue that summary judgment is warranted. (Doc. #254, *PageID* #2298-2300).

To survive Defendants' Motion for Summary Judgment on a retaliation, Plaintiff must present evidence showing (1) he engaged in protected conduct; (2) Defendants took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019).

In the present case, assuming Plaintiff engaged in protected conduct, he has not presented evidence from which a reasonable inference can grow that he suffered adverse action or that any adverse action he purportedly suffered was motivated by his protected conduct. There is no question that Plaintiff was confined at RCI only twice: from

January 18, 2011 through April 6, 2011, and from March 15, 2013 through July 11, 2014. His allegations of adverse action involve his transfer from other Ohio institutions back to RCI. But his transfer in January 2011 from the Southern Ohio Correctional Facility to RCI reduced his security level. RCI carries a security rating of Level 3—Close Security; Southern Ohio Correctional Facility carries a security rating of Level 4—Maximum Security. (Doc. #255, *PageID* #2322). Additionally, there is no genuine dispute that this transferred occurred when RCI had a bed available for a security downgrade. *Id.* Although Plaintiff was apparently transferred back to SOCF in April 2011—and his security level increased back to Level 4—there is no genuine dispute that this transfer occurred due to his threats, disrespect, and lewd behavior. *Id.* He was eventually transferred back to RCI on March 15, 2013, again benefitting from a security downgrade to Level 3. *Id.* As a result, this transfer did not constitute an adverse action or an adverse action motivated in any part by protected conduct.

Accordingly, Defendant Clark and the other Defendants are entitled to summary judgment in their favor on Plaintiff's remaining retaliation claims.

## F.    Eighth Amendment: Denial of Medical Treatment

This Court previously declined to dismiss Plaintiff's Eighth Amendment claim against Dr. Krisher that is based on alleged denial of medical care during Plaintiff's second period of incarceration at RCI. (Doc. #139, *PageID* #1215; Doc. #177, *PageID* #s 1624-25; Doc. #197). Defendants contend that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because he cannot satisfy the elements needed to

show deliberate indifference.

"The Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.,* 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks and citations omitted). When a plaintiff establishes two components—one objective, the other subjective—deliberate-indifference exists. *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011).

The objective component requires the plaintiff to demonstrate that his or her medical need is sufficiently serious. *Id.* The subjective component requires a showing "that prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004)).

To succeed in showing these two components, Plaintiff must travel far:

> In evaluating a deliberate indifference claim, [a distinction exists] "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all."

*Alspaugh*, 643 F.3d at 169 (6th Cir. 2011) (quoting, in part, *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

## Objective Component

"Sometimes [the objective-component] inquiry is a simple one. For example, because a serious medical condition carries with it a serious medical need, when prison

officials fail to provide treatment for an inmate's serious medical condition, the inmate has endured an objectively serious deprivation." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citations omitted). "So …when an inmate had a medical need 'diagnosed by a physician as mandating treatment,' the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment 'so cursory as to amount to no treatment at all[.]'" *Id.* (citations omitted).

Defendants rely on the affidavit of Andrew Eddy, M.D., and well more than one thousand pages of Plaintiff's medical records attached to Dr. Eddy's affidavit. (Doc. #261). Dr. Eddy served as ODRC medical director at the time of Plaintiff's medical treatment at RCI. Dr. Eddy worked closely with, and directly supervised, Dr. Gary Krisher. Dr. Krisher reported directly to Dr. Eddy.

Unfortunately, Dr. Krisher cannot provide his affidavit because he retired from ODRC on a medical disability due to his severe neurological condition. Dr. Eddy explains, "Dr. Krisher's disability has now rendered him incapable of nearly any and all voluntary movements, including the ability to speak, and even the ability to use his hands to type emails and/or write." (Doc. #261, *PageID* #3224). This leaves Dr. Eddy to review Plaintiff's RCI medical records. He has done so with precision, and he provides specific information about Plaintiff's medical care, supported by Plaintiff's medical records, that show he frequently sought and received treatment from Dr. Krisher and others for his many health problems. This treatment included numerous medications. On March 15, 2013, he was prescribed:

Glipizide, an oral hypoglycemic medication used to treat diabetes mellitus
Neurontin, a medication used to treat pain and discomfort due to neuropathy
Glucophage, an oral hypoglycemic medication used to treat diabetes mellitus
Fenofibrate, a medication used to lower blood cholesterol and lipid levels
Minoxidil, a high-blood pressure medication
Pravastatin, an oral hypoglycemic used to treat diabetes mellitus
HCTZ (hydrocholorathiazide), which is used to treat blood pressure
Cozaar, a high-blood-pressure medication
Lopressor, a high-blood-pressure medication
Tylenol #3, a narcotic opiod medication used to treat pain from various causes
Colace, a laxative
Regular insulin
A diabetic diet

(Doc. #261, *PageID* #3224). Further treatment by Dr. Krisher and others provided included medication adjustments, medical tests (e.g., blood tests; a colonoscopy—which he refused to undergo; an abdominal CT scan—normal results; tracking over time his white-blood-cell counts—stable result). *Id.* at 3227-28. He also received treatment by medical specialists for a fractured orbital bone including specialists in otolaryngology, oral and maxillofacial surgery, ophthalmology, and oculoplastic surgery. *Id.* at 3229. Dr. Eddy's affidavit, as confirmed by the attached medical records, demonstrates that Dr. Krisher and others provided treatment to him for his many problems and the treatment they provided was not "so cursory as to amount to no treatment at all." *Rhinehart*, 894 F.3d at 737.

Given, moreover, that Plaintiff was provided ongoing treatment for his conditions, "the objective component of [his] Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (citing *Miller v. Calhoun Cty.*, 408 F.3d 803,

19

819 (6th Cir. 2005) (other citation omitted)).  To accomplish this, "[t]here must be 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.'  The plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment."  *Id*. (quoting, in part, *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (other citations omitted). The evidence Plaintiff submits in opposition to Defendants' evidence is not verifying medical evidence that probes the adequacy of his medical treatment at RCI.  There consequently is no genuine issue of fact over the adequacy of the medical care Dr. Krisher and others provided him, let alone proof that the medical care he received was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id*. (citation omitted); *see also* Doc. #255, Cardaras Declaration and attached medical records, *PageID* #s 3106-61).

Accordingly, there is no genuine issue over the fact that Plaintiff did not endure an objectively serious medical deprivation.  Even if he had, his Eighth Amendment claim also collapses under the subjective-component inquiry.

### Subjective Component

"A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.  Instead, the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'  This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded

that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738

(quoting, in part, *Santiago*, 734 F.3d at 591; citing *Comstock v. McCrary*, 273 F.3d 693,

703 (6th Cir. 2001) (other citations omitted).

Plaintiff has not produced affirmative evidence indicating that Dr. Krisher or any

other ODRC medical personnel ignored his requests for treatment or his complaints about

his health problems or otherwise failed to provide him medical care during his

incarceration at RCI. Dr. Eddy's and Ms. Cardaras' affidavits, and the medical records

attached to their affidavits, establishes that Dr. Krisher and others actively addressed

Plaintiff's health problems and regularly adjusted his treatment plans. Plaintiff at most

simply disagrees with the treatment decisions and medical care provided him without

producing medical evidence that shows any medical Defendant erred or acted negligently

in caring for Plaintiff, let alone "with a mental state 'equivalent to criminal

recklessness.'" *Rhinehart*, 894 F.3d at 738 (citation omitted).

Plaintiff alleges in his Third Amended Complaint that while he was in the medical

unit, nurse Smith refused to move him to a heated cell, and refused to give him

medications that the doctor did not order. (Doc. #132, *PageID* #1107). He further asserts

that on the "next shift" he was moved into a heated cell and given his medication. *Id.*

at 1108. He also maintains that when he complained about nurse Smith, and she wrote a

retaliatory report. *Id.* at 1107.

While Plaintiff claims that he was forced to endure uncomfortable conditions

when initially placed in the medical unit, he also explains that his exposure to these

conditions did not last more than one shift. *See id.* He was also given his medications on the next shift. *See id.* And his allegations do not support a claim for retaliation because he has not alleged or shown that he suffered any adverse action due to his report about Nurse Smith.

## Conclusion

In light of the above, Defendants are entitled to summary judgment on Plaintiff's claim that Dr. Krisher and other medical personnel violated his rights under the Eighth Amendment.

### G.    Defendants Upchurch and Mohr

The Court previously dismissed Plaintiff's claims against Deputy Warden Upchurch with the exception of the claim that Upchurch violated his First Amendment right to freely exercise his religion by failing to provide him with kosher meals or a kosher diet. (Doc #177, *PageID* #s 1628-31, 1635-37, 1638-39, 1654-55; Doc. #197).

Plaintiff alleges that during his first incarceration at RCI, Defendant Upchurch refused to approve his kosher diet and punished him for writing a grievance about the issue. (Doc.#132, *PageID* #1110). He later acknowledges in paragraph 41 of this Third Amended Complaint that he received kosher meals at RCI. *Id.* at 1116-17. In paragraph 41 he also alleges the ODRC Director Mohr violated his constitutional rights, presumably referring to his alleged lack of kosher meals or diet. *Id.* at 1117.

An inmate must have a reasonable opportunity to exercise his First Amendment religious freedom guarantees. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). The inmate's rights, however, are limited by "the fact of incarceration and from valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). For example, a delay in receiving kosher meals while the prison officials confirm religion-based food needs is rationally related to a valid penological interest. "A short delay in granting a dietary request is insufficient to establish a First Amendment violation." *Price v. Jones,* 1:12cv360, 2013 WL 2424141, at *6 (S.D. Ohio 2013)[6] (quoting *Tapp v. Proto,* 404 F. App'x 563, 565 (3d Cir. 2010) ("inmate's constitutional rights not violated where prison provided kosher meals within two weeks after initial request was made")).

Defendant Upchurch is entitled to summary judgment on Plaintiff's First Amendment claim for at least two reasons. First, there is no genuine dispute that the Chaplain and Warden at RCI approved Plaintiff's request for kosher meals. He submitted his request for kosher meals in a Request for Religious Accommodation on April 12, 2011 and approval followed on April 15, 2011. (Doc. #255, *PageID* #2855-56). This alone, puts to rest Plaintiff's First Amendment claim against Defendant Upchurch. *See Price,* 1:12cv360, 2013 WL 2424141, at *6; *see also Tapp,* 404 F. App'x at 565. Second, Plaintiff does not rely on medical evidence indicating that his health suffered as a result of not receiving a kosher meal while at

---

[6] Report & Recommendation adopted, 2013 WL3287107 (June 28, 2013).

RCI.  *See Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) ("the withholding of meals, while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify as a 'wanton infliction of pain' where the prisoner continues to receive adequate nutrition.").

As to ODRC Director Mohr, Plaintiff fails to identify any particular thing Mohr did wrong in connection with his request for kosher meals or diet.  Plaintiff's First Amendment claim thus fails to expose Mohr to §1983 liability.  *See Heyne v. Metro. Nashville Pub. Schools.*, 655 F.3d 556, 564 (6th Cir. 2011).  Additionally, Defendant Mohr cannot be liable under §1983 for failing to supervise.  *See Peatross,* 818 F.3d at 241.

For these reasons, Defendant Upchurch and Mohr are entitled to summary Judgment on Plaintiff's First Amendment kosher-meal/diet claim.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. #254) be granted and judgment be entered in favor of Defendants and against Plaintiff; and

2. The case be terminated on the Court's docket.


August 19, 2019                              *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge

24

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).